UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:16-cv-25009

JERRY LEE COLEMAN,　　　　　　　　　　　　　　　　**CLASS ACTION**
on behalf of himself and all others
similarly situated,

      Plaintiff,

v.

CUBESMART, a Maryland
Real Estate Investment Trust,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Jerry Lee Coleman, on behalf of himself and all others similarly situated, files this Complaint against CubeSmart, a Maryland Real Estate Investment Trust, and alleges as follows:

## INTRODUCTION

1.  This is a proposed class action lawsuit brought on behalf of the Plaintiff and others like him who rented storage units from CubeSmart, a national self-storage company. The proposed class challenges CubeSmart's practice of collecting a hidden commission every time a customer buys a storage insurance policy from a particular third-party insurance company. CubeSmart's practice is deceptive, unconscionable, and results in CubeSmart being unjustly enriched to the detriment of its customers.

2.  CubeSmart's scheme can be summarized as follows:

3. CubeSmart requires its customers to maintain insurance for the things they store in their CubeSmart storage unit.  The company's form contract specifically requires customers to agree to insure the full replacement value of their unit's contents.

4. Although CubeSmart requires its customers to maintain storage insurance, it does not itself issue insurance policies to its customers.  Instead, CubeSmart markets something called the "Great American Stored Property Insurance Program" to its customers.  This "program" is a storage insurance policy underwritten by a third-party insurance company.

5. CubeSmart characterizes itself as a mere collection agent for this insurance company.  In its form contract, CubeSmart states that "[a]ny insurance premium . . . is being collected for a third party insurance provider pursuant to a separate agreement."

6. This characterization is reinforced by the insurance participation form that customers who purchase the Great American policy must complete.  In that form, the customer is required to acknowledge that a "portion" of the insurance premium is covering CubeSmart's "expense" in serving as a collection agent for the third-party insurance company.  Specifically, the form reads as follows: "I understand a portion of the cost I pay is applicable to the storage company's _expense_ in collecting, accounting, and remitting payment to the Insurance Company" (emphasis added).

7. The definition of "expense" is "the amount of money that is needed to pay for or buy something."  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/expense (last visited November 11, 2016).

8. In truth, however, CubeSmart's cut of the premium far exceeds the amount necessary to cover its "expense" in serving as a collection agent.  Indeed, CubeSmart generates substantial revenues and profits from its customers' purchases of Great American policies.  In its

own public filings, CubeSmart identifies this income as "customer insurance commissions." These commissions serve as a hidden profit center for CubeSmart.

9. The definition of "commission" is "an amount of money paid to an employee for selling something." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/commission (last visited November 11, 2016).

10. CubeSmart has deceived and continues to deceive its customers by mischaracterizing a "commission" as an "expense," thereby concealing its financial interest in the customers' purchase of an insurance policy whose price includes an undisclosed commission.

## PARTIES, JURISDICTION, AND VENUE

11. Plaintiff, JERRY LEE COLEMAN, is a resident of Seminole County, Florida.

12. CubeSmart is a Maryland Real Estate Investment Trust with its principal place of business in Pennsylvania.

13. This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiff is a citizen of the State of Florida and CubeSmart is a citizen of a different state. The amount in controversy in this action exceeds $5,000,000.00, exclusive of interests and costs, there are more than 100 members of each of the putative classes, and this action is brought by a citizen of a state that is different from the state where CubeSmart is incorporated and has its principal place of business.

14. This Court has personal jurisdiction over CubeSmart because it continuously and systematically operates, conducts, engages in, and carries on business in Florida by renting over 5 million square feet of self-storage space from 74 Florida locations, including locations in Miami, Florida. CubeSmart purposefully avails itself of Florida's consumer market through the advertisement, promotion, and rental of its self-storage space in Florida and engages in solicitation

and service activities within this state. In addition, CubeSmart committed in Florida the unlawful and tortious acts set forth below, which injured and caused damage to the Plaintiff in Florida.

15. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because Defendant resides in this district for purposes of the statute, as CubeSmart is subject to the personal jurisdiction of this Court for purposes of this action.

## FACTUAL ALLEGATIONS

16. CubeSmart's core business is the rental of storage space to customers. CubeSmart is not an insurer and is not registered as such in the State of Florida. CubeSmart is not engaged in the sale of insurance.

17. CubeSmart owns facilities in 22 states and in the District of Colombia. The company operates approximately 74 locations in Florida.

18. If a customer wants to rent storage space at a CubeSmart location, he or she must execute a rental agreement.

19. CubeSmart's rental agreements are standardized and the company uses the same standard rental agreement nationwide. A copy of CubeSmart's standard rental agreement is attached to this Complaint as **Exhibit 1**.

20. CubeSmart's rental agreement requires customers to maintain insurance on the contents of their storage unit. This insurance must be sufficient to cover the full replacement value of the property the customer is storing in the unit. Specifically, the rental agreement states that the customer "WILL MAINTAIN INSURANCE FOR THE FULL REPLACEMENT VALUE OF THE CUBE CONTENTS."

21. CubeSmart is not an insurance company and does not insure the property of its customers. In the rental agreement, CubeSmart expressly represents that it does not insure the contents of storage units, stating that "OWNER DOES NOT INSURE THE CUBE CONTENTS."

22. CubeSmart makes available the "Great American Stored Property Insurance Program" to its customers.

23. This "program" is an insurance policy underwritten by the Great American Assurance Company. The policy administrator is City Securities Insurance, LLC. On information and belief, the Great American policy is the <u>only</u> policy that CubeSmart makes available to its customers.

24. The Great American policy was offered at three coverage levels: (1) $2,000 of coverage for $12 a month; (2) $3,000 of coverage for $17 a month; and (3) $5,000 of coverage for $27 a month.

25. Every time a customer elects to buy a Great American insurance policy, CubeSmart receives a share of the monthly insurance premium paid by the customer. In the insurance participation form completed by customers who purchase the Great American policy, CubeSmart represents that a "portion" of the insurance premium is covering CubeSmart's "expense" in serving as a collection agent for the third-party insurance company. A copy of this insurance participation form is attached to this Complaint as **Exhibit 2**.

26. However, in its own securities filings, CubeSmart has characterized the income from this "portion" of the insurance premium as "customer insurance commissions."

27. CubeSmart's share of these insurance premiums generates substantial revenues and profits for the company. In CubeSmart's Form 10-K for the 2015 fiscal year, the company reported taking in $45.2 million in non-rental revenue, including "customer insurance commissions." This

was a $5.1 million increase from the 2014 fiscal year, during which CubeSmart reported taking in $40.1 million in non-rental revenue. CubeSmart attributed part of this $5.1 million increase in revenue to "increased insurance penetration."

28. CubeSmart's reliance on the Great American insurance policy as a profit driver was expressly envisioned by the policy's administrator, City Securities Insurance, LLC. In a press release announcing the launch of the Great American Stored Property Insurance Program, City Securities noted that, "[f]or storage operators" the program "means a revenue boost to the bottom line."

29. Despite the fact that CubeSmart profits from the sale of Great American policies to its customers, the company expressly deceives its customers about its financial interest. CubeSmart portrays itself to its customers as a mere collection agent with no financial stake in the sale of insurance. In Section f of the rental agreement, which is titled "<u>Insurance</u>," CubeSmart represents that "[a]ny insurance premium . . . is being collected for a third party insurance provider pursuant to a separate agreement."

30. This characterization of CubeSmart as serving as a disinterested collection agent is reinforced by Great American's insurance participation form, which states that a "portion" of the insurance premium is covering CubeSmart's "expense" for serving as a collection agent and that "I understand a portion of the cost I pay is applicable to the storage company's expense in collecting, accounting, and remitting payment to the Insurance Company." *See* **Exhibit 2**.

31. In truth, CubeSmart recoups more than just the "expense" it incurs in serving as a collection agent for Great American. It profits from the sale of Great American policies, but conceals that fact from its customers.

32. On September 10, 2016, the Plaintiff rented self-storage space at CubeSmart store 0857, located in Sanford, Florida.

33. Consistent with the requirement found in his CubeSmart rental agreement that he maintain insurance for his stored belongings, the Plaintiff purchased $2,000 of coverage for $12 a month.

34. Each month since renting his self-storage space and purchasing self-storage insurance, the Plaintiff has been charged $12 on his monthly statement from CubeSmart.

35. CubeSmart has never disclosed to the Plaintiff, or any of the class members, the true nature of its relationship with Great American Assurance Company or City Securities Insurance, LLC. Specifically, CubeSmart has not disclosed the fact that it profits from the sale of these policies.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this Complaint as a class action pursuant to Federal Rule of Civil Procedure 23.

### Class Definition

37. Plaintiff seeks to represent the following Class:

Class

All persons who rented storage units from CubeSmart within the United States and who purchased Great American self-storage insurance policies offered at CubeSmart within the applicable limitations period (the "Class Period").

Excluded from this class are CubeSmart, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

38. Plaintiff seeks to represent the following Florida Class:

Florida Class

All persons who rented storage units from CubeSmart within Florida and who purchased Great American self-storage insurance policies offered at CubeSmart within the applicable limitations period (the "Florida Class Period").

Excluded from this class are CubeSmart, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

39.     The number of members in the Class and Florida Class is in the thousands and joinder of all Class members and Florida Class members in a single action is impracticable.

40.     This class action is brought pursuant to Rule 23(b)(2) because CubeSmart has acted or refused to act on grounds generally applicable to all of the members of the Class and the Florida Class, thereby making final injunctive relief or declaratory relief concerning the Class and the Florida Class appropriate.

41.     This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiff's claims and the Class members' and the Florida Class members' claims predominate over any question of law or fact affecting only individual Class members and Florida Class members.

42.     CubeSmart has subjected Plaintiff and the members of the Class and the Florida Class to the same unlawful, unfair, and deceptive practices and harmed them in the same manner. The conduct described above is CubeSmart's standard business practice.

**A.  Numerosity**

43.     The individual Class and Florida Class members are so numerous that joinder of all members is impracticable.  CubeSmart operates approximately 445 facilities nationwide, including 74 facilities in Florida.

44.     Nationwide, in 2015 alone, CubeSmart collected $45.2 million in non-rental income, including customer insurance commissions.  Upon information and belief, these

commissions were collected from thousands of customers. The exact number of Class members in Florida, as well as nationwide, including the Class members and the Florida Class members' names and addresses, can be identified from CubeSmart's business records.

### B. Commonality/Predominance

45. Common questions of law and fact exist as to Plaintiff's, the Class members', and the Florida Class members' claims. These common questions predominate over any questions solely affecting individual Class and Florida Class members, including but not limited to, the following:

    a.    Whether CubeSmart engaged in a deceptive and unfair business practice by misleading the Class and the Florida Class about its financial interest in the Great American self-storage insurance product and the nature of the payments it receives from the insurance premium;

    b.    Whether the representations made and insurance premiums collected by CubeSmart would lead a reasonable consumer to believe CubeSmart only recouped its expenses in collecting and remitting insurance premiums;

    c.    Whether CubeSmart receives undisclosed commissions, kickbacks, or fees from the self-storage insurance;

    d.    Whether CubeSmart manipulated the Class and the Florida Class in order to maximize its own profits at the expense of the Class and the Florida Class;

    e.    Whether and to what extent the Defendant's conduct injured the Plaintiff and the Class and the Florida Class members;

    f.    Whether CubeSmart breached its contract with the Class and the Florida Class members, and violated the implied covenant of good faith and fair dealing, by retaining a portion

of the premiums while representing in the rental agreement that it would not insure the Class and the Florida Class;

g.  Whether CubeSmart unlawfully enriched itself at the expense of the Class and the Florida Class;

h.  Whether CubeSmart violated Florida's Deceptive and Unfair Trade Practices Act; and;

i.  Whether CubeSmart's conduct is unconscionable.

## C. Typicality

46. Plaintiff's claims are typical of the Class members' and the Florida Class members' claims because of the uniformity and common purpose of CubeSmart's unlawful conduct. Plaintiff, like all Class members and Florida Class members, was damaged through his payment of "commissions" that were mischaracterized as "expenses."

47. Each Class member and Florida Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of CubeSmart's unlawful conduct.

## D. Adequacy

48. Plaintiff will fairly and adequately protect and represent the interest of each member of the Class because he has suffered the same wrongs as the Class members. Similarly, the Plaintiff will fairly and adequately protect and represent the interest of each member of the Florida Class because he has suffered the same wrongs as the Florida Class members.

49. Plaintiff is fully cognizant of his responsibilities as a Class representative and has retained Leon Cosgrove, LLC and Buckner + Miles to prosecute this case. The firms are experienced in complex class action litigation, including litigation related to unfair and deceptive

trade practices, and have the financial and legal resources to meet the costs of, and understand the legal issues associated with, this type of litigation.

50. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

### E. Requirements of Federal Rule of Civil Procedure 23(b)(2)

51. The prerequisites to maintaining a class action for equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as CubeSmart has acted or refused to act on grounds generally applicable to the Class and the Florida Class, thereby making appropriate final equitable relief with respect to the Class and the Florida Class as a whole.

52. CubeSmart's actions are generally applicable to the Class and the Florida Class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the Class and the Florida Class as a whole.  As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

### F. The Prerequisites of Rule 23(b)(3) are Satisfied

53. The questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and the Florida Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

54. The likelihood that individual members of the Class and the Florida Class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

55. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class and the Florida Class. Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### COUNT I
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(On behalf of the Florida Class)**

56. Plaintiff re-alleges paragraphs 1 through 55 as if fully set forth herein.

57. This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

58. At all times material, Plaintiff and all members of the Florida Class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA, in accordance with Section 501.211, Fla. Stat.

59. At all times material, CubeSmart conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

60. CubeSmart has engaged in unlawful schemes and courses of conduct through one or more unfair and deceptive acts and practices alleged above.

61. Specifically, CubeSmart misled and deceived its customers by claiming that it only collected a portion of the premium sufficient to cover its expenses when, in fact, it collected "commissions" that served as a significant profit center for CubeSmart.

62. The unfair and deceptive acts and practices alleged above occurred in connection with CubeSmart's trade and commerce in Florida.

63. As a direct and proximate result of CubeSmart's FDUTPA violations, Plaintiff and the Florida Class have been damaged in an amount to be proven at trial.

64. Plaintiff and the Florida Class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

## COUNT II
## BREACH OF CONTRACT
**(On behalf of the Class)**

65. Plaintiff re-alleges paragraphs 1 through 55 as if fully set forth herein and further alleges the following:

66. Defendant CubeSmart utilizes a standard form rental agreement with its customers.

67. This contractual agreement requires customers to purchase insurance for their stored goods, requiring them to agree that they "WILL MAINTAIN INSURANCE FOR THE FULL REPLACEMENT VALUE OF THE CUBE CONTENTS."

68. The contract further states that CubeSmart will not insure the customer's goods: "OWNER DOES NOT INSURE THE CUBE CONTENTS." With regard to the insurance provided by Great American Assurance Company and City Securities Insurance, LLC, the contract states that "Any insurance premium shown [in the rental agreement] is being collected for a third party insurance provider pursuant to a separate agreement."

69. This contract is legally valid and enforceable, and Plaintiff complied with all material terms and conditions precedent by purchasing self-storage insurance through Great American Assurance Company and City Securities Insurance, LLC and paying his monthly premiums.

70. In the insurance participation form completed by its customers who purchase the Great American policy and made part of CubeSmart's contract with its customers, CubeSmart represents that it will collect only a "portion" of the insurance premium sufficient to cover CubeSmart's "expense" in serving as a collection agent for the third-party insurance company. However, CubeSmart collects more than that "portion" and in so doing breaches its contract with Class members.

71. Plaintiff and the Class suffered damages as a result of CubeSmart's breaches.

### COUNT III
### UNCONSCIONABILITY
### (On behalf of the Class)

72. Plaintiff re-alleges paragraphs 1 through 55 as if fully set forth herein and further alleges the following:

73. CubeSmart's policies and practices with regard to selling self-storage insurance are or were substantively and procedurally unconscionable in the following respects, among others:

   a. CubeSmart is a company worth hundreds of millions of dollars that has an extreme advantage over its customers in terms of bargaining power;

   b. CubeSmart failed to disclose that it was keeping more of the premium than was necessary to cover its expenses in collecting, accounting and remitting payment to the insurance company actually providing the storage insurance;

   c. The premium charged on the insurance policy that CubeSmart markets to its customers is outrageously unfair to consumers.

74. Considering the great business acumen and experience of CubeSmart in relation to Plaintiff and the Class, its superior and unique knowledge of the arrangement between itself and the insurer whose premiums it purports to be collecting, the material omissions regarding the

insurance being sold, including the fact that CubeSmart profits from the sale of insurance to customers, the commercial unreasonableness of its arrangement with the insurer and its concealment of it, and similar policy concerns, the contract provisions that allowed CubeSmart to collect the insurance premiums from Plaintiff and the Class are unconscionable and therefore unenforceable as a matter of law.

75. Plaintiff and the Class suffered damages as a result of Defendant's unconscionable policies and practices.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of the Class)**

76. Plaintiff re-alleges paragraphs 1 through 55 as if fully set forth herein and further alleges the following:

77. Plaintiff and each member of the class conferred a benefit on CubeSmart through their payment for storage insurance with the Great American Assurance Company and City Securities Insurance, LLC, from which CubeSmart took a "portion" that exceeded its actual expenses for collecting, accounting and remitting payment to the insurance company actually providing the storage insurance, allowing CubeSmart to enrich itself to the detriment of the Class.

78. CubeSmart voluntarily accepted and retained the benefit.

79. Under the circumstances, it would be inequitable for CubeSmart to retain the benefit, as it was obtained unlawfully through unfair and deceptive practices.

80. Plaintiff and the class suffered damages as a result of CubeSmart's misconduct.

**COUNT V**
**BREACH OF CONTRACT AND BREACH**
**OF COVENANT OF GOOD FAITH AND FAIR DEALING[1]**
**(On behalf of the Class)**

81. Plaintiff re-alleges paragraphs 1 through 55 as if fully set forth herein and further alleges the following:

82. Plaintiff and the Class entered into a valid and enforceable standard form contract with CubeSmart.

83. The law implies a covenant of good faith and fair dealing in every contract.

84. CubeSmart breached the covenant of good faith and fair dealing by, among other things, falsely representing in the contract that it was only being reimbursed for expenses incurred in collection, accounting, and remitting payment to the insurance company that was actually providing the storage insurance when, in fact, CubeSmart was receiving a significant "commission" from the insurance premiums that far exceeded its actual expenses, thereby creating an undisclosed profit center for CubeSmart and damaging the Plaintiff and the Class members.

85. Plaintiff and the Class suffered damages as a result of CubeSmart's breach.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself, the Class, and the Florida Class requests the following relief:

  a. Certification of the Class and the Florida Class;

  b. Appointment of Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

---

[1] Florida and certain other states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract. Other states treat such a claim as a species of breach of contract. For the sake of convenience, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

    c. A jury trial and judgment against Defendant CubeSmart;

    d. A declaration and an order requiring that CubeSmart make full and accurate disclosure to consumers of the amount of commissions it receives;

    e. The cost of suit, including reasonable attorneys' fees, in accordance with FDUTPA;

    f. General, actual, and compensatory damages in an amount to be determined at trial;

    g. Restitution of all insurance commissions paid by Plaintiff and members of the Class and Florida Class, as a result of the wrongs alleged herein, in an amount to be determined at trial;

    h. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

    i. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: December 1, 2016.

Respectfully submitted,

*/s/ Scott b. Cosgrove, Esq.*
Scott B. Cosgrove, Esq.
Fla. Bar No. 161365
Alec H. Schultz, Esq.
Fla. Bar No. 35022
LEÓN COSGROVE LLC
255 Alhambra Circle, Suite 424
Coral Gables, Florida 33134
Tel:     305.740.1975
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: anoonan@leoncosgrove.com
Email: eperez@leoncosgrove.com

AND

                              David M. Buckner, Esq.
                              Fla. Bar No. 60550
                              Seth E. Miles, Esq.
                              Fla. Bar No. 385530
                              Brett E. von Borke, Esq.
                              Fla. Bar No. 0044802
                              BUCKNER + MILES
                              3350 Mary Street
                              Miami, Florida 33133
                              Coral Gables, Florida 33134
                              Tel:    305.964.8003
                              Email: david@bucknermiles.com
                              Email: seth@bucknermiles.com
                              Email: vonborke@bucknermiles.com
                              *Counsel for Plaintiff and the putative class*