UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 16-25009-CIV-MARTINEZ-GOODMAN

JERRY LEE COLEMAN, on
behalf of himself and all others
similarly situated,

       Plaintiffs,

v.                                            **CLASS ACTION**

CUBESMART, a Maryland Real Estate
Investment Trust,

       Defendant.
_____/

**THE CLASS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

The attorneys' fees, costs, and incentive award sought by Class Counsel are well within

the ranges established by case law and are fully supported by the applicable factors.[1]

The requested fee award of $1,370,362 represents 25% of the total $5,481,450 Settlement

Value and is supported by the guidelines for common fund fee awards in the Eleventh Circuit and

nationwide. Moreover, Class Counsel incurred over $12,621.52.97 in uncompensated and

necessary out-of-pocket litigation expenses, and the request for reimbursement of $11,000 of these

expenses is also reasonable. (Ex. 1 at ¶8). Finally, Named Plaintiff and Class Representative, Jerry

Lee Coleman ("Plaintiff"), participated in the litigation with diligence and played a valuable role

in obtaining the Settlement Agreement on behalf of the Class. Accordingly, he has earned the

---

[1] All capitalized defined terms herein have the same meaning ascribed in the Settlement Agreement, the Class' Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class and Incorporated Memorandum of Law (D.E. 78), and the Court's Order Preliminarily Approving Class Settlement (D.E. 79).

requested incentive award of $15,000.

Class Counsel, therefore, respectfully requests that this Court: (1) grant the fee award of $1,370,362 plus the $11,000 in expenses; and (2) award the $15,000 incentive award to Plaintiff and Class Representative.

Regarding the position of Defendant CubeSmart, CubeSmart does not oppose or object to the amount of attorneys' fees, costs and incentive award sought in the Class' Motion for Attorneys' Fees, Expenses and Incentive Award.

## I.   <u>INTRODUCTION</u>

On December 1, 2016, Plaintiff sued on behalf of himself and all others similarly situated who had purchased storage insurance through CubeSmart.  (D.E. 1).  The Plaintiff alleged that CubeSmart deceived its customers about the extent of its financial interest in the storage insurance product.  The Plaintiff claimed that CubeSmart's conduct (1) violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) breached contracts; (3) was unconscionable; (4) resulted in CubeSmart being unjustly enriched; and (5) breached covenants of good faith and fair dealing.  CubeSmart vigorously denied the Plaintiff's claims.

The Class has actively litigated this lawsuit for over two years.  The litigation was hard-fought.  The Parties engaged in motion practice and discovery, including the production of more than 17,000 pages of documents and electronically stored information.  (Ex. 1 at ¶4).  The lawsuit involved sharply opposed positions on several fundamental legal questions, including whether CubeSmart's conduct violated FDUTPA.  The Parties mediated this case three times before an experienced mediator.  (*Id.* at ¶9).  The parties initially mediated on September 29, 2018. They again mediated on October 31, 2018 and November 20, 2018. (*Id.*).  Over the next weeks, the Parties engaged in a series of detailed discussions finalizing the terms of the Settlement Agreement. (*Id.*).  Once those additional terms were agreed-to, the Settlement Agreement was

finalized and executed by the Parties on January 23, 2019.  (*Id.*).  On April 3, 2019, the Court issued an Order Preliminarily Approving the Settlement (D.E. 79).

## II.   STATEMENT OF FACTS

### A.   FACTUAL BACKGROUND

#### 1.   Procedural History

The Plaintiff brought this lawsuit seeking monetary damages and declaratory and injunctive relief arising from the sale of storage insurance, alleging that CubeSmart deceived its customers about the extent of its financial interest in the storage insurance product. (D.E. 1).  The Plaintiff alleged that, as a result of CubeSmart's deception, the Class paid millions of dollars to CubeSmart that CubeSmart was not legally entitled to receive.

CubeSmart denied all of the Class' allegations of wrongdoing. CubeSmart consistently defended its conduct by, inter alia, arguing that it never deceived its customers about its financial interest in the storage insurance product. CubeSmart also advanced other affirmative defenses.

On January 31, 2017, CubeSmart moved to dismiss the Class' Complaint.  (D.E. 21). On June 21, 2018, the Court denied CubeSmart's Motion to Dismiss.  (D.E. 56).  Discovery continued. During the course of discovery, CubeSmart produced more than 17,000 pages of documents.  (Ex. 1 at ¶4).  The Parties agreed to the material terms of a settlement on November 20, 2018, and fully executed the Settlement Agreement on January 23, 2019.  (*Id.* at ¶9).

On April 3, 2019, the Court issued an Order Preliminarily Approving the Settlement and Certifying a Class for Settlement.  (D.E. 79).  The Court also approved a class notice program. (*Id.*).  Pursuant to that notice, which is ongoing, Class Counsel is providing notice to more than 101,175 potential Class members through email and U.S. Mail notice. (Ex. 1 at ¶5).

#### 2.   Settlement Negotiations

The Parties mediated three separate times before mediator Rodney Max, of Upchurch

Watson White and Max. (Ex. 1 at ¶5). The Parties' first mediation took place on September 29, 2018. (*Id.*). The Parties were unable to resolve the dispute. (*Id.*). On October 31, 2018, counsel for the Parties participated in a second mediation with Mr. Max. (*Id.*). The Parties were still unable to resolve the dispute. (*Id.*). Although the Parties were still unable to resolve the dispute, they continued settlement discussions. (*Id.*). It was not until November 20, 2018, that the Parties came to an agreement on material terms. On January 23, 2019, the Parties executed the Settlement. (*Id.*).

Under the terms of the Settlement Agreement, Settlement Class Members who do not opt out will be able to receive 66% of the insurance monies paid that were retained by CubeSmart. (Ex. 1 at ¶6). On average, this equates to approximately $6.76 per month.

## III.  ARGUMENT

### A.  CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED.

#### 1.  Class Counsel Is Entitled To Be Compensated For Creating A Common Benefit For The Class.

Attorneys who create a common fund or benefit for a group of persons are entitled to their fees and costs based on the common benefit achieved. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole."). This exception to the general rule that all parties are to bear their own costs "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) (quoting *Boeing*, 444 U.S. at 478). "Furthermore, courts have also recognized that in order to encourage 'private attorney general' class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid." *Id.*

Appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O' Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985).

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. Courts in this Circuit have applied the percentage of the fund approach, holding:

> Even before *Camden I*, courts in this Circuit recognized that 'a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases.' *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 670 (M.D. Ala. 1988). More importantly, the Court observed first hand the monumental effort exerted by Class Counsel in this case, and does not need to see timesheets to know how much work Class Counsel have put in to reach this point.

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2001).

The Court has substantial discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably

be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I,* 946 F.2d at 774). Therefore, "[t]he district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Waters v. Cook's Pest Control, Inc.*, 2:07-CV-00394-LSC, 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (internal quotations omitted). In making the determination, courts are guided by a number of non-exclusive guidelines. *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1359. Nevertheless, "[t]o avoid depleting the funds available for distribution, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Cook's Pest Control*, 2012 WL 2923542, at *15 (internal quotations omitted); *Muransky v. Godiva Chocolatier, Inc.*, No. 16-16486, 2019 WL 1760292, at *12 (11th Cir. Apr. 22, 2019) (upholding award to class counsel of 33% of the class settlement fund). "The majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *James D. Hinson Elec. Contracting Co. v. AT&T Servs., Inc.*, 2016 WL 10459419, at *3 (M.D. Fla. Dec. 16, 2016) (describing 25% as the "benchmark"). Here, Class Counsel's request for fees of $1,370,362, representing 25% of the $5,481,450 Settlement Value, is reasonable.

**B.      APPLICATION OF THE *CAMDEN I* FACTORS SUPPORTS THE REQUESTED FEE.**

The  Eleventh Circuit in *Camden I* provided a set of factors the Court should use to determine a reasonable percentage of the fund to award class counsel: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of the other employment by the attorney as a result

of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)

time limitations imposed by the clients or the circumstances; (8) the results obtained, including the

amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10)

the undesirability of the case; (11) the nature and the length of the professional relationship with

the clients; and (12) fee awards in similar cases.  *Camden I*, at 772 n.3 (citing factors originally set

forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are guidelines and are not exclusive.  "Other pertinent factors are the

time required to reach a settlement, whether there are any substantial objections by class members

or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits

conferred upon the class by the settlement, and the economics involved in prosecuting a class

action."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  In addition, the

Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the

particular case."  *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1333 (internal quotations omitted).

As applied here, the *Camden I* factors demonstrate that the Court should approve the requested

fee.

### 1. The Issues Involved Were Novel And Difficult (Factor 2) Making It Viewed As Undesirable (Factor 10), And Required The Skill Of Highly Talented Attorneys (Factor 3).

These factors favor a higher fee award where there are "complex issues requiring

experience and skill on the part of Class Counsel."  *In re Bayou Sorrel Class Action*, 2006 WL

3230771, at *4.  Difficult issues in a case can also often contribute to the undesirability of a case.

*Id.* at *6 (finding undesirability due in part to issues such as "problems of proof, problems of

causation, and a host of other complex issues"); *see also Cook's Pest Control, Inc.*, 2012 WL

2923542, at *18 (finding undesirability due to complex discovery issues, along with "the expense

and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high

likelihood of recovery"). "Counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1364.

This litigation presented complex legal issues regarding FDUTPA that centered on CubeSmart's business practices. Specifically, CubeSmart maintained the Class' FDUTPA claim failed because of the particular phrasing of the representations made to the Class and sought to distinguish the facts of the case from prior precedent. CubeSmart also argued that the Class' FDUTPA claim failed because the Class could prove neither causation nor damages. The discovery in this case was also complex and required a substantial amount of resources. Class Counsel was required to spend money to obtain, manage, and review the documents that served as the foundation of its case. These significant expenses were incurred with no guarantee of repayment thereby making the case relatively undesirable to other law firms.

These complex legal issues impacted the desirability of taking on this lawsuit. With respect to CubeSmart, no other law firm has taken the risk to bring this or a similar action. Each stage of the litigation was hotly contested and required substantial expertise to ensure the Class' claims were effectively prosecuted. Absent the diligence, care, and expertise of Class Counsel, CubeSmart could have prevailed in full at multiple junctures in this litigation. Indeed, a loss by the Class on causation or damages would have summarily ended the Class' case.

Furthermore, in evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. *See Camden I*, 946 F.2d at 772, n.3; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Throughout this litigation, CubeSmart was represented by extremely capable counsel from the prominent national law firms of Morgan Lewis & Bockius LLP and Boies Schiller Flexner LLP. These are worthy, highly competent adversaries. *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality

- 8 -

of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). These factors, therefore, weigh in favor of the requested fees.

> ### 2.     Class Counsel Attained An Excellent Result For Class Members (Factor 8).

The significant monetary relief Class Counsel obtained for Class members favors the requested fee award. A $5,481,450 settlement was an excellent result. It is especially significant that Class Counsel achieved a common fund, which is "a substantial, tangible, and real benefit for the Class." *See Wolff v. Cash 4 Titles*, 03-22778-CIV, 2012 WL 5290155, at *3 (S.D. Fla. Sept. 26, 2012), report and recommendation adopted, 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) ("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of 'coupons', Class Counsel here created a wholly cash common fund.").

The $5,481,450 settlement fund is an unqualified success. (Ex. 1 at ¶6). The fund represents 66% of the Class' estimated damages. (*Id.*). Because of Class Counsel's efforts, thousands of Class members will be able to recover 66% of the total money retained by CubeSmart that, according to the Class' allegations, CubeSmart obtained through deception. (*Id.*). Because Class Counsel obtained this significant relief despite substantial financial risks, this factor supports the requested fee award.

> ### 3.     Class Counsel Assumed Considerable Risk To Bring This Action On A Contingent Basis (Factor 6), Which Precluded Other Employment (Factor 4).

Class Counsel took a significant risk in prosecuting this action entirely on a contingent fee basis. Attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) (internal quotation omitted).

Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1364; *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). This is particularly the case when the law firms prosecuting the case are of the size of Class Counsel's firms, and thus the time devoted to the class action precludes other employment. *See In re Bayou Sorrel Class Action*, 2006 WL 3230771, at *5 (W.D. La. Oct. 31, 2006) (awarding 36% fee based in part on the reasoning that due to the small size of class counsel, it lost "the time and opportunity they would have had available to accept other employment.").

Without the "bonus" from a contingency fee arrangement, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1365 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd *sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990)). For instance, in *Wolff v. Cash 4 Titles*, the court awarded 33.3% of the settlement fund where class counsel's "risk was magnified by the fact that, unlike some class actions, th[e] case was a full, not partial, contingency fee case." 2012 WL 5290155, at *2. The court particularly noted that there was no guarantee of class counsel receiving their hourly rates or reduced hourly rates for their efforts in the litigation and that there was no hybrid contingent fee negotiated guaranteeing counsel even a minimum amount of fees and costs. *Id.* at *2. Similarly, in *Cook's Pest Control*, the court found this factor supported the approval of a 35% fee award because class counsel accepted the matter on a contingent basis, incurred significant expense in prosecuting the action, and received no compensation. 2012 WL 2923542, at *17.

Here, Class Counsel incurred substantial risk given the contingent nature of the fee, Class Counsel's wholly contingent outlay of out-of-pocket sums, and the high risk of failure and nonpayment.  Additionally, Class Counsel have incurred unreimbursed expenses in litigating on behalf of the Class, none of which would have been recovered if the case were not successfully concluded.  (Ex. 1 at ¶2).  From the time Class Counsel filed suit, there existed a significant possibility that they would achieve no recovery for the Class and, hence, no compensation.  Indeed, Class Counsel took the risk that CubeSmart would prevail at the motion to dismiss stage, the class certification stage, or the summary judgment stage.

Furthermore, the time spent on this case by law firms of the sizes of Class Counsel detracted from work on other potential cases.  Class Counsel put off other matters, outsourced work, and declined cases they could otherwise have pursued but for the efforts toward this case. (*Id.*).  Although Class Counsel has successfully resolved the litigation, this result was not foreseeable at the outset; rather, the contingency risks were substantial. (*Id.*).  These factors support the reasonableness of Class Counsel's fee request.  (*Id.*).

### 4.      The Requested Fee Is Lower Than Awards in Similar Cases (Factor 12).

The fee sought here – 25% of the Common Fund – is below the fee typically awarded in similar cases.  Indeed, "[a]n award of 25% is on the *low end* of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases." *CompSource Oklahoma v. BNY Mellon, N.A.*, No. CIV 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012).  By contrast, several recent decisions in this Circuit award attorneys' fees up to or in excess of thirty percent, confirming the fairness and reasonableness of the 25% fee requested here. *See e.g., Muransky*, 2019 WL 1760292, at *12 (upholding award to class counsel of 33% of the class settlement fund).  *In re Managed Care Litig v. Aetna*, MDL No. 1334, 2003

WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding 35.5%); *Cook's Pest Control, Inc.*, 2012 WL 2923542, at *18 (awarding 35%); *Wolff*, 2012 WL 5290155, at *7   (awarding 33.3%); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317-MDL-Seitz, D.E. 1557 (S.D. Fla. Apr. 19, 2005) (awarding 33.3%); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-CIV-Gold, D.E. 626 (S.D. Fla. May 30, 2003) (awarding 33.33%); *Tapken v. Brown*, No. 90-691-CIV-MARCUS, D.E. 362 (S.D. Fla. Feb. 28, 1995) (awarding 33%); *See also Bickel v. Sherriff of Whitley County*, 1:08-CV-102-TLS, 2015 WL 1402018, at *6 (N.D. Ind. Mar. 26, 2015) (awarding 43.7%); *Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, CIV-12-1319-D, 2015 WL 2254606, at *2 (W.D. Okla. May 13, 2015) (awarding 40%); *Donovan v. Sheriff*, 3:11-CV-133-TLS, 2015 WL 7738035, at *5 (N.D. Ind. Dec. 1, 2015) (awarding 40%); *Braud v. Transp. Serv. Co. of Illinois,* CIV.A. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (awarding 37%); *In re Bayou Sorrel Class Action*, 2006 WL 3230771, at *7 (awarding 36%); *In re U.S. Bancorp Litig.,* 291 F.3d 1035 (8th Cir. 2002) (affirming award of 36%); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133-1141 (W.D. La. 1997) (awarding 36%); *In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45%);   Accordingly, this factor attests to the reasonableness of Class Counsel's fee request.

### 5.    The Requested Fee Is Lower Than The Customary Fee For Similar Services In The Market (Factor 5).

The requested fee is more than reasonable when considering what the customary fee would be for similar services in the market.  The Court should consider the market rate when determining fee awards to class counsel.  *See Wolff*, 2012 WL 5290155, at *4. "[C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome for a paying client." *Id.* (quoting *In re Cont'll Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992).  Class Counsel's fee request falls within the range of the private marketplace,

where contingency fee arrangements often approach or equal forty percent of any recovery.  S*ee*
*Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate
the market."); *RJR Nabisco, Inc. Sec. Litig.,* 818 (MBM), 1992 WL 210138, at *7, Fed. Sec. L.
Rep. (CCH) ¶ 94,268 at 94,268 (S.D.N.Y. Aug. 24, 1992) ("[W]hat should govern [fee] awards . .
. what the market pays in similar cases.").

   And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff
recovers.  In those cases, therefore, the fee is directly proportional to the recovery."   *Blum v.
Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring); *see also Kirchoff v. Flynn,* 786 F.2d
320, 323 (7th Cir. 1986) (noting "40 percent is the customary fee it tort litigation"); *In re Public
Service Co. of New Mexico,*  91-0536M, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this
were a non-representative litigation, the customary fee arrangement would be contingent, on a
percentage basis, and in the range of 30% to 40% of the recovery."); *In re Pearlman*, 6:07-BK-
00761-KSJ, 2014 WL 1100223, at *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("[T]he Court finds the
35% contingency fee to be reasonable and in line with similar non-bankruptcy rates."); *In re
Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1366 n.35 (noting that contingency fees of
up to 40% are customary in the private marketplace).   The record here leaves no doubt that Class
Counsel's fee request is appropriate and comports with attorneys' fees awarded in similar cases.

   **6.    The Professional Skill And Standing Of Respective Counsel Support
           The Requested Fee Award (Factor 9).**

   The requested fee is reasonable given Class Counsel's professional skill and expertise,
which has served the Class well in this litigation.  The Court should consider the "experience,
reputation, and ability of the attorneys" in determining a fee award.   *In re Checking Account
Overdraft Litig.,* 830 F. Supp. 2d at 1359; *See also Gevaerts v. T.D. Bank,* 1:14-CV-20744-RLR,
2015 WL 6751061, at *12 (S.D. Fla. Nov. 5, 2015) ("In the private marketplace, counsel of

exceptional skill commands a significant premium.  So too should it here.").

Here, Class Counsel are qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions.  (Ex. 1 at ¶7).  Class Counsel have not only successfully tried class actions to jury verdicts and defended those verdicts in the appellate courts but have also obtained hundreds of millions of dollars in settlements for classes throughout the United States.  (*Id.*).  CubeSmart's Counsel, moreover, defended against the Class' claims with fervor and adeptness, raised significant legal roadblocks to recovery, and required Class Counsel to maintain the highest quality of representation in order to reach the point of settlement.  (*Id.*).  This factor weighs in favor of the requested fees.  (*Id.*).

### 7. The Remaining *Camden I* Factors Also Favor Approving The Requested Fee.

The remaining *Camden I* factors likewise support granting Class Counsel's fee request.  As noted above, the burdens of this litigation foreclosed Class Counsel's pursuit of other work; the relatively small size of the firms representing the Class, and the major commitment involved, precluded Class Counsel from working on other cases and accepting other representations.  Moreover, without adequate compensation and financial reward, cases such as this simply could not be pursued.  As a court in this Circuit previously found in *In re: Checking Account Overdraft Litigation,* "given the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized.  The Court believes, and holds, that the proper incentive here is a 30% fee."  830 F. Supp. 2d at 1364.

### 8. The Claims Presented Serious Risk.

The settlement here is particularly noteworthy given the combined litigation risk.  CubeSmart mounted vigorous defenses, filed a motion to dismiss, and made compelling arguments

at an oral argument.  CubeSmart was represented by experienced and talented trial lawyers and therefore the Class had no guarantee of success at any future trial.  Success under these circumstances represents a genuine milestone and further supports the reasonableness of Class Counsel's fee request.

9.   **CLASS COUNSEL'S LITGATION EXPENSES SHOULD BE REIMBURSED.**

"Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class."  *Int'l Previous Metals Corp.,* 190 F.3d at 1298 (internal quotation and citation omitted); *Gevaerts*, 2015 WL 6751061, at *14 (awarding costs and expenses for, *inter alia*, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses").

Class Counsel seeks reimbursement for a total of $11,000 in litigation costs and expenses. (Ex. 1 at ¶8).  This sum is actually *less than* the costs and expenses that Class Counsel incurred in connection with the prosecution and settlement of this lawsuit.  (*Id.*).  Specifically, these costs and expenses consisted of, but were not limited to: mediator's fees and expenses and document review and management expenses.  (*Id.*).  All of these out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this lawsuit.  Accordingly, Class Counsel are entitled to reimbursement of $11,000 in costs.

B.   **THE CLASS REPRESENTIVE IS ENTITLED TO AN INCENTIVE AWARD.**

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (quoting *Ingram v. Coca-Cola, Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)); *see also Godshall v. Franklin*

*Mint Co.,* 01-CV-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); *In re Linerboard Antitrust Litig.,* CIV.A. 98-5055, 2004 WL 1221350, at * 18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 for each of the five class representatives), amended on other grounds, CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

The Class seeks an award of $15,000 to compensate the Class Representative Jerry Lee Coleman for taking significant risks and expending significant efforts on behalf of the Class, of which the $5,481,450 Settlement Value is a direct result.  Mr. Coleman undertook additional substantial risk in acting as the class representative because CubeSmart could have pursued cost-shifting remedies under FDUTPA had a settlement not been reached or Mr. Coleman not prevailed. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (awarding incentive award where "Plaintiff filed this lawsuit despite the knowledge that if he lost, the court might have ordered him to pay Defendant's attorneys' fees and costs.").   These risks were substantial.

In addition to those risks, Mr. Coleman dedicated significant time to this litigation.  He gathered documents in response to CubeSmart's document requests.  He also appeared and participated in a full-day mediation session.  Mr. Coleman remained in constant contact with Class Counsel regarding the progress of the litigation and had no less than fifteen phone calls with Class Counsel to discuss the various aspects of the litigation.  Mr. Coleman also reviewed even the most ministerial of pleadings that were essential in guiding Class Counsel's litigation efforts.  Thus, the modest award of $15,000  should be granted.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, Class Counsel respectfully requests that the Court: (1) grant the fee award of $1,370,362 plus expenses of $11,000.00; and (2) award the

$15,000 incentive award to Plaintiff and class representative Mr. Coleman.

Dated: June 3, 2019.                       Respectfully submitted,

*Scott B. Cosgrove*
Scott B. Cosgrove, Esq.
  Fla. Bar No. 161365
Alec H. Schultz, Esq.
  Fla. Bar No. 35022
John R. Byrne, Esq.
  Fla. Bar No. 126294
Jordi C. Martínez-Cid, Esq.
  Fla. Bar No. 100566
**León Cosgrove, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel:    305.740.1975
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: jbyrne@leoncosgrove.com
Email: jmartinez-cid@leoncosgrove.com
Email: anoonan@leoncosgrove.com
Email: eperez@leoncosgrove.com
Email: lburns@leoncosgrove.com

AND

David M. Buckner, Esq.
  Fla. Bar No. 60550
Seth E. Miles, Esq.
  Fla. Bar No. 385530
Brett E. von Borke, Esq.
  Fla. Bar No. 0044802
**Buckner + Miles**
3350 Mary Street
Miami, Florida 33133
Tel:    305.964.8003
Email: david@bucknermiles.com
Email: seth@bucknermiles.com
Email: vonborke@bucknermiles.com

*Counsel for Plaintiff and the putative class*

## **CERTIFICATE OF CONFERENCE**

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), the parties have conferred regarding the instant motion.  CubeSmart does not oppose or object to the amount of attorneys' fees, costs and incentive award sought in the Class' Motion for Attorneys' Fees, Expenses and Incentive Award.


*Scott B. Cosgrove*
Scott B. Cosgrove, Esq.